IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RANDY V. RODRIGUEZ, | CASE NO. 1:21-CV-01363-PAB |
| Petitioner, | JUDGE PAMELA A. BARKER |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN DOUGLAS FENDER, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

On July 15, 2021, Petitioner Randy V. Rodriguez, a prisoner in state custody, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petitioner under § 2254(a). On August 19, 2021, the matter was referred to me pursuant to Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Aug. 19, 2021). On March 3, 2022, Respondent Douglas Fender, in his official capacity as Warden of the Lake Erie Correctional Institution (hereinafter, the State), filed a Return of Writ that included the state court record and hearing transcripts. (ECF #9). On June 6, 2022, Mr. Rodriguez filed his Traverse. (ECF #11).

As explained below, I recommend the District Court **DENY** all grounds for relief.

## Procedural History

### A. Factual Findings of the Court of Appeals

The Ohio Court of Appeals, Eleventh Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Rodriguez rebuts this

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eleventh District

determined as follows:

{¶2} On the evening of April 20, 2019, appellant and his girlfriend, L.C. ("the victim"), left a party in Cuyahoga County. While en route home to Wickliffe Ohio, in Lake County, and without any ostensible warning, appellant indicated he was going to kill the victim. Appellant began to strike the victim in the face and choked her to the point of losing consciousness. When she regained consciousness, he repeated the beating. Although the victim attempted to exit the vehicle, appellant would not allow her.

{¶3} Upon arriving at their residence, appellant dragged the victim into the garage and continued the assault; the victim again lost consciousness, at which point, appellant poured gasoline on her and threatened to burn her alive.

{¶4} After apparently regaining his composure, appellant visited a neighbor, Dana Silvestro, and advised her that the victim was next door and "f'd up." Ms. Silvestro went next door and observed the victim badly beaten and laying on the garage floor. The victim vomited blood and Ms. Silvestro noticed a strong smell of gasoline. When the victim regained consciousness, she told Ms. Silvestro that appellant was trying to kill her. Both women returned to Ms. Silvestro's home where she called 911.

{¶5} Officers from the Wickliffe Police Department responded and found appellant in the garage. There was no indication he had been involved in the altercation, *i.e.*, his clothing was clean, showing no signs of blood or stains. He advised them he was the victim's fiancé and explained that the victim became intoxicated at a party, threatened suicide by pills, and poured gasoline on herself. At this point, appellant stated he went to the neighbor for help.

{¶6} Officers explained that they needed to check the home for other potentially injured persons. Appellant declined to consent and advised the officers to obtain a warrant. Appellant was subsequently detained and taken to the Wickliffe Police Department.

{¶7} Meanwhile, the victim had been taken to the hospital for treatment. While there, officers obtained written consent to search both her vehicle and the couple's residence, which she owned. In the home, officers noticed blood stains on an area rug in the garage. The victim advised officers appellant was wearing blue jeans, a dark gray button-down shirt to the party they attended, and K-Swiss tennis shoes (clothing he was not wearing when police arrived). Inside a bedroom closet, officers observed K-Swiss tennis shoes with apparent blood on them. And, in the basement laundry, they found a load in the washer that included, among other things, a dark gray button-down shirt, blue jeans, and key to the victim's Jeep Wrangler.

{¶8} After being assessed, the victim was transported to Metro Health Center in Cleveland due to brain bleeds. After further assessment, officers learned the victim suffered from two nasal fractures, three chips to her teeth, two subdural hematomas, a concussion, a torn carotid artery, as well as multiple contusions to her face, neck, torso, back, and arms.

(ECF #9-1 at PageID 169-70; *State v. Rodriguez,* No. 2019-L-125, 155 N.E.3d 1, 2-4 (Ohio Ct. App. June 8, 2020), *appeal not allowed*, 165 N.E.3d 336 (Ohio 2021) (table)).

**B.      State court convictions and sentence**

On May 31, 2019, a Lake County Grand Jury returned a nine-count indictment against Mr. Rodriguez, charging him as follows:

- Counts 1 and 4: Felonious assault in violation of Ohio Revised Code § 2903.11(A)(1).

- Counts 2 and 5: Kidnapping in violation of Revised Code § 2905.01(A)(3).

- Counts 3 and 6: Kidnapping in violation of Revised Code § 2905.01(B)(2).

- Count 7: Domestic violence in violation of Revised Code § 2919.25(A).

- Count 8: Possessing criminal tools in violation of Revised Code § 2923.24.

- Count 9: Tampering with evidence in violation of Revised Code § 2921.12(A)(1).

(ECF #9-1 at PageID 85-87).

On June 6, 2019, through appointed counsel, Mr. Rodriguez waived the right to be present at arraignment and pled not guilty to all charges. (*Id.* at PageID 90). On July 29, 2019, Mr. Rodriguez retracted his former plea of not guilty and pled guilty to Count 3 (kidnapping), Count 4 (felonious assault), and a lesser included offense of Count 9 (attempted tampering with evidence). (*Id.* at PageID 93; *see also id.* at PageID 96-100; ECF #9-2 at PageID 305-06).

On September 5, 2019, the trial court sentenced Mr. Rodriguez to a prison term of 14 to 18 years and informed him of his responsibilities and registration duties as a Violent Offender pursuant to Revised Code §§ 2903.41 through 2903.44. (ECF #9-1 at PageID 104-07).

## C. Direct appeal

On October 9, 2019, through new appellate counsel, Mr. Rodriguez appealed to the Eleventh District. (ECF #9-1 at PageID 109). In his appellate brief, Mr. Rodriguez raised three assignments of error, as follows:

> **First Assignment of Error**: The trial court erred when it accepted Appellant's guilty plea because Appellant received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights and as a result Appellant's guilty plea was not made knowingly and voluntarily.
>
> **Second Assignment of Error**: The trial court erred and Appellant received ineffective assistance of counsel when the convictions for Kidnapping and Felonious Assault were not merged for purposes of sentencing.
>
> **Third Assignment of Error**: The trial court erred when it imposed a consecutive sentence on Appellant because a consecutive sentence is not supported by the facts of the record and is contrary to law.

(*Id.* at PageID 119-36). On June 8, 2020, the Eleventh District affirmed. (*Id.* at PageID 167-81; *Rodriguez*, 155 N.E.3d 1).

On December 4, 2020, Mr. Rodriguez filed a notice of appeal and a motion for leave to file a delayed appeal in the Supreme Court of Ohio. (*Id.* at PageID 183-95). On December 15, 2020, the Supreme Court of Ohio granted Mr. Rodriguez's motion for delayed appeal and ordered him to file a memorandum in support of jurisdiction. (*Id.* at PageID 213). In his memorandum, Mr. Rodriguez raised the same claims as in the Eleventh District. (*Id.* at PageID 215-32). On March 30, 2021, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 269; *State v. Rodriguez*, 165

N.E.3d 336 (Ohio 2021) (table)). There is no indication in the record that Mr. Rodriguez applied for certiorari to the United States Supreme Court.

### FEDERAL HABEAS CORPUS

Before this Court, Mr. Rodriguez asserts three grounds for relief, as follows:

**Ground One**: The trial court erred when it accepted Petitioner's plea because Petitioner received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment Rights and as a result Petitioner's guilty plea was not made knowingly, voluntarily, and/or intelligently.

**Supporting facts**: Trial counsel was ineffective for failing to move to suppress evidence obtained from the search of Petitioner's residence. Here, a motion by trial counsel to suppress evidence obtained from the search would have had a reasonably probability of success due to the constitutional violations suffered by Petitioner and Petitioner would not have entered a guilty plea but would have proceeded to trial.

**Ground Two**: The trial court erred and petitioner received ineffective assistance of counsel when the convictions of kidnapping and felonious assault were not merged for the purposes of sentencing.

**Supporting facts**: The kidnapping and felonious assault charges are allied offenses of similar import and the convictions should have merged under Revised Code § 2941.25. Trial courted erred when it did not merge the two offenses and trial counsel erred when he acquiesced to the trial court's determination that the two offenses did not merge.

**Ground Three**: The trial court erred when it imposed a consecutive sentence that was not supported by the facts of the record and contrary to law.

**Supporting facts**: Petitioner urges the Court to find that consecutive sentences were not appropriate because his conduct was "really an isolated instance and is in no way illustrative of Petitioner's habits or routine patterns of behavior."

(ECF #1-1 at PageID 19-31). Mr. Rodriguez requests the Court grant his petition or hold an evidentiary hearing to present evidence in person. (*Id.* at PageID 31-32).

STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Rodriguez's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a

6

case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), cert. denied, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Id.* at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

### BARRIERS TO FEDERAL HABEAS CORPUS REVIEW

The District Court lacks jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted). Moreover, merely asserting that a state law error violates the federal constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional

state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

ANALYSIS

## I.    Ground One is meritless.

In Ground One, Mr. Rodriguez alleges trial counsel's failure to file a motion to suppress evidence obtained from the search of Mr. Rodriguez's residence undermines the validity of his guilty plea such that he did not enter it knowingly and voluntarily. (ECF #1-1 at PageID 22). The State responds that Mr. Rodriguez's guilty plea operates to waive independent constitutional claims occurring prior to entering the plea, including ineffective assistance of counsel claims relating to the suppression of evidence. (ECF #9 at PageID 67-68). Alternatively, the State argues the Eleventh District's decision reasonably determined the facts in light of the evidence presented in the trial court proceedings and reasonably applied the *Strickland* standard. (*Id.* at PageID 68-72).

In *Tollett v. Henderson*, 411 U.S. 258 (1973), the Supreme Court held that a criminal defendant who pleads guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 267. But the defendant may attack the voluntary and intelligent character of a guilty plea by showing the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases, as Mr. Rodriguez alleges here. *Id.*

The familiar two-pronged *Strickland* analysis applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."

10

*Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). In the context of a *Strickland* challenge to a guilty plea, the prejudice prong requires the defendant "show that there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial." *Lockhart,* 474 U.S. at 59. Where the principal allegation of ineffectiveness is the failure to litigate a Fourth Amendment claim competently, the defendant must also show that his Fourth Amendment claim is meritorious. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986).

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586 (1980). Exceptions to the warrant requirement exist and the Supreme Court has upheld the validity of a warrantless search when a housemate who shares authority over the space voluntarily consents to the search. *See United States v. Matlock,* 415 U.S. 164, 170-71 (1974). In *Georgia v. Randolph,* 547 U.S. 103 (2006), the Supreme Court addressed the question of dueling occupants, one of whom consented to a search while another expressly objected to it. The *Randolph* Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to police by another resident." *Id.* at 120. Thus, as between two physically present residents, one who consents and one who objects, the objector's non-consent controls absent other circumstances or exceptions to the warrant requirement. *Id.* at 116 n.6.

In *Fernandez v. California,* 571 U.S. 292 (2014), the Supreme Court addressed the defendant's arguments that "the presence of the objecting occupant is not necessary when the police are responsible for his absence." *Id.* at 302. In *Fernandez,* police officers investigating a reported gang-related incident knocked on the door of an apartment unit from which they heard

11

screams. *Id.* at 295. A woman answered the door; she appeared to be crying and had a large bump on her nose and blood on her shirt. *Id.* at 296. Just before the officers could conduct a protective sweep of the apartment, the defendant, a co-tenant of the residence, appeared at the doorway and refused them access. *Id.* Suspecting the defendant had assaulted the woman, the officers arrested him and took him to the police station for booking. *Id.* An hour later, the police returned to the woman's door, informed her of the defendant's arrest, and received her oral and written consent to search the apartment. *Id.*

On appeal from conviction, the appellate court affirmed, holding that because the defendant was not present when the woman consented to the search, *Randolph* did not apply. *Id.* at 292. The Supreme Court considered the defendant's arguments that (1) his absence at the time of the woman's consent should not matter because he was absent only after the police took him away; and (2) it was sufficient that he objected to the search while he was still present. *Id.* at 302. As to the first issue, the Court clarified its decision in *Randolph,* stating:

> In *Randolph,* the Court suggested in dictum that consent by one occupant might not be sufficient if "there is evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection." We do not believe the state should be read to suggest that improper motive may invalidate objectively justified removal. Hence, it does not govern here.
>
> The *Randolph* dictum is best understood not to require an inquiry into the subjective intent of officers who detain or arrest a potential objector but instead refer to situations in which the removal of the potential objector is not objectively reasonable.

*Id.* at 302. As to the second issue, the defendant's assertion that his objection, made at the threshold of the premises that police wanted to search, remained effective until he changed his mind and withdrew the objection, did not persuade the Supreme Court because it was inconsistent with *Randolph's* reasoning:

First, the argument cannot be squared with the "widely shared social expectations" or "customary social usage" upon which the *Randolph* holding was based. Explaining why consent by one occupant could not override an objection by a physically present occupant, the *Randolph* Court started:

> "[I]t is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.' Without some very good reason, no sensible person would go inside under those conditions."

It seems obvious that the calculus the hypothetical caller would likely be quite different if the objecting tenant was not standing at the door. When the objecting occupant is standing at the threshold saying, "stay out," a friend or visitor invited to enter by another occupant can expect at best an uncomfortable scene and at worst violence if he or she tries to brush past the objector. But when the objector is not on the scene (and especially when it is known that the objector will not return during the course of the visit), the friend or visitor is much more likely to accept the invitation to enter. Thus, petitioner's argument is inconsistent with *Randolph's* reasoning.

*Id.* at 303-04.

On direct appeal, Mr. Rodriguez claimed there was a reasonably probability that, had trial counsel moved to suppress evidence obtained from the illegal search and seizure of his residence, the motion would have been granted and Mr. Rodriguez would have rejected the plea offer and proceeded to trial. (ECF #9-1 at PageID 125). The Eleventh District reviewed the claim and determined as follows:

> {¶13} Under his first assignment of error, appellant asserts his trial counsel was ineffective for failing to challenge the search of his residence with a motion to suppress.

> {¶14} To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington* . . . .

> {¶15} "'Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" "'When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record

showing there was a reasonable probability the result of [the proceeding] would have differed if the motion had been filed or pursued.'"

{¶16} Generally, "searches and seizures inside a home without a warrant are presumptively unreasonable." It is a fundamental Fourth Amendment principle, however, that neither a search warrant nor probable cause is required if valid consent to search, an exception to the constitutional requirements, is given. Consent to search is valid by someone other than a defendant where the third-party granting consent possessed common authority over the premises sought to be searched.

{¶17} With the foregoing in mind, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." In *Randolph*, the defendant's estranged wife had given police consent to search the marital home for items of drug use. The defendant, who was present at the home, refused to give police consent. In concluding the consent of the estranged wife could not override the objection of the defendant, the United States Supreme Court recognized two "complementary rules," "one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." The latter rule is fundamentally premised upon the objecting occupant's express objection as well as his physical presence.

{¶18} Later, in *Fernandez v. California*, 571 U.S. 292 (2014), the consent of a joint occupant of a residence was deemed valid, despite the objection of a defendant, who had been arrested and removed from the home before subsequent consent was obtained. In *Fernandez*, police knocked on an apartment door when they heard screams from the residence. The door was answered by a woman who appeared battered and bloody. The defendant came to the door and objected to the officer's entry. Suspecting the defendant had assaulted the woman, the officer placed him under arrest and removed him. An officer later returned to the apartment and obtained oral and written consent to search the same. In declining to give *Randolph*, supra, an overly expansive interpretation, the Court upheld the search, holding a lawful occupant of a home has the right to invite police to enter the dwelling to conduct a search, despite the absent co-occupant's previous objection.

{¶19} In this matter, appellant objected to the search, but was subsequently arrested and taken to the police department. The co-occupant of the home, the victim, subsequently provided consent to officers from the hospital to search the residence. This fact pattern is similar to the facts in *Fernandez* and thus, we conclude the victim's consent and the officers' subsequent search were valid.

{¶20} We recognize that, in *Fernandez*, consent was obtained by a co-occupant who was in the residence when consent was given. We do not think this factual distinction

14

affects the legal analysis, however. That is, in *Randoph*, supra, the majority consistently repeated it was the defendant's physical presence and immediate objection to his wife's consent that distinguished it from prior case law. The Court reinforced this point in its conclusion, holding "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." The crucial point, therefore, is the presence or absence of the objector, not the consenting co-occupant; simply because the victim was in the hospital when she gave consent should not invalidate that consent. To conclude otherwise would allow a coincidental formality (the co-occupant's physical presence in the residence) to vitiate consent that is otherwise valid and voluntary. In effect, an absent, expressly-objecting co-occupant has "assumed the risk" that another co-occupant "might permit the common area to be searched."

{¶21} Notwithstanding the foregoing, appellant relies upon *United States v. Hudsputh*, 459 F.3d 922 (8th Cir. 2006) ("*Hudspeth I*") in support of his argument that counsel should have filed a motion to suppress. In that case, the defendant objected to the search of his home computer while officers were searching his place of business, pursuant to a valid warrant. Subsequently, police obtained consent from the defendant's wife to conduct the search. The Eighth Circuit invalidated the search; later, however, on rehearing en banc, the court upheld the search relying principally upon the authority of *Fernandez*, supra. Appellant requests this court to adopt the reasoning of *Hudspeth I* which would, in his apparent view, demonstrate that counsel had a reasonable probability of success on the hypothetical motion to suppress. We decline to accept this invitation.

{¶22} Our role in evaluating counsel's performance is, in light of controlling authority, to assess whether counsel's performance was deficient because, given the evidence, there was a reasonable probability of success. To adopt the defunct ruling in *Hudspeth I* would be advisory (because we are not addressing the merits of the denial of an actual motion to suppress) and would transcend the narrow scope of our review. Here, there is evidence of valid consent by a co-occupant after appellant, over objection, was removed from the residence. *Randolph* and *Fernandez* are controlling authority from the United States Supreme Court, regardless of any potential argument counsel could have made vis-à-vis *Hudputh I* in a hypothetical motion to suppress. And, as discussed above, the facts of the instant case, when viewed in relation to the holdings in *Randolph* and *Fernandez*, demonstrate no reasonable probability of succeeding on a motion to suppress. We therefore hold counsel's performance was not deficient for failing to file such a motion.

{¶23} Appellant also argues counsel should have filed a motion to suppress due to an alleged invalid protective sweep of his residence. He asserts that, at no point, did the officers at the scene have any reason to believe others were inside the home, let alone that other potential occupants who were in danger or posed a danger to the officers.

Thus, he maintains the officers lacked "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the * * * scene."

{¶24} Even assuming the officers had no reasonable basis for conducting the protective sweep, no evidence was removed as a result of the sweep. Only after the victim gave valid consent to search the residence did officers obtain evidence relating to the incident. Where nothing was seized, there would be no basis to file a motion to suppress based upon an unreasonable seizure, even if the search is arguably problematic.

(ECF #9-1 at PageID 171-76; *Rodriguez,* 155 N.E.3d at 4-6).

As in the state courts, Mr. Rodriguez asks this Court to adopt the now defunct ruling in

*Hudspeth:*

Although *Hudspeth* was later reconsidered and the search . . . was ultimately validated in *United States v. Hudspeth,* 518 F.3d 954 (8th Cir. 2008), Petitioner urges this Court to adopt the reasoning and justification of the Eight Circuit's original 2006 holding in *Hudspeth* as the applicable standard under the Ohio Constitution and Ohio Law when a physically present co-habitant has objected to a search before a non-present co-habitant has consented. The facts of this case, similar to those in *Hudspeth,* suggest that the consent obtained from a non-present co-habitant should in no way vitiate the prior objection asserted by Petitioner. Petitioner, while physically present at the residence, made explicitly clear to the officers involved that he no longer wished for them to search without a warrant. The officers were well aware of Petitioner's expression of his constitutionally protected rights as a joint occupant of the residence, and still blatantly discarded Petitioner's expression simply by hauling him away from the home and obtained consent from a non-present cohabitant.

(ECF #1-1 at PageID 24).

On federal habeas review, district courts are constrained to considering whether the state court decision was contrary to or an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Here, the Eleventh District considered the Supreme Court precedent set forth in *Strickland*, *Randolph*, and *Fernandez* and reasonably applied the law to

the facts before it. Mr. Rodriguez did not argue the adjudication was based on an unreasonable determination of the facts, nor did he show the decision was contrary to Supreme Court precedent; therefore, Ground One is meritless and I recommend the District Court **DENY** habeas relief for the claim.

## II.    Ground Two is not cognizable and otherwise meritless.

In Ground Two, Mr. Rodriguez claims the trial court erred in failing to merge the kidnapping and felonious assault convictions for purposes of sentencing and his counsel was ineffective for failing to advocate for merger of those counts. (ECF #1-1 at PageID 26). The State counters that Mr. Rodriguez's claim that the trial court failed to merge the convictions as allied offenses under Revised Code § 2941.25 is not cognizable on federal habeas review because it is based on the application of state law, and his claim that counsel erred in failing to advocate for merger is meritless because the Eleventh District reasonably applied *Strickland* in rejecting the claim. (ECF #9 at PageID 73-75).

The Double Jeopardy Clause of the Fifth Amendment protects against, among other things, the imposition of multiple punishments for the same offense. *Volpe v. Trim,* 708 F.3d 688, 696 (6th Cir. 2013); *see also Ohio v. Johnson,* 467 U.S. 493, 498 (1984). The prohibition against multiple punishments protects against the imposition of sentences greater than the state legislature intended. *Volpe,* 708 F.3d at 696; *Missouri v. Hunter,* 459 U.S. 359, 366 (1983). No Fifth Amendment violation occurs if the state legislature intended to impose multiple punishments for the same offense. *Hunter,* 459 U.S. at 366. When assessing the state legislature's intent, a federal court is bound by a state court's construction of that state's own statutes. *White v. Howes,* 586 F.3d 1025, 1035 (6th Cir. 2009). For purposes of double jeopardy analysis, once a state court has

17

determined the state legislature intended cumulative punishments, a federal habeas court must

defer to that determination. *Banner v. Davis,* 886 F.2d 777, 780 (6th Cir. 1989). Thus, when

assessing intent, federal courts are bound by a state court's determination that a legislature

intended multiple punishments for a single criminal incident. *Lash v. Sheldon,* No. 1:19 CV 1616,

2020 WL 6712165, at *15 (N.D. Ohio Oct. 20, 2020) (citing *Volpe,* 708 F.3d at 696-97).

Ohio courts apply the allied offense statute, Revised Code § 2941.25, to determine

whether the state legislature intended "cumulative punishments" for certain, multiple offenses.

*Volpe,* 708 F.3d at 697. The statute states:

> (A)    Where the same conduct by a defendant can be construed to constitute two
> or more allied offenses of similar import, the indictment or information may contain
> counts for all such offenses, but the defendant may be convicted of only one.

> (B)    Where the defendant's conduct constitutes two or more offenses of dissimilar
> import, or where his conduct results in two or more offenses of the same or similar
> kind committed separately or with a separate animus has to each, the indictment or
> information may contain counts for all such offenses, and the defendant may be
> convicted of all of them.

Ohio Rev. Code § 2941.25.

Interpreting the statute, the Supreme Court of Ohio holds that "a defendant charged with

multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the

conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were

committed separately, or (3) the conduct shows that the offenses were committed with a separate

animus." *State v. Ruff,* 34 N.E.3d 892, 896 (Ohio 2015). In *Ruff,* the Supreme Court of Ohio held

that two or more offenses are of dissimilar import when they involve separate victims or inflict

separate harms. *Id.* at 897.

18

First, to the extent Mr. Rodriguez claims the trial court violated Revised Code § 2941.25, such a claim is not cognizable on federal habeas review because "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," not an issue of state law. *See Estelle*, 502 U.S. at 67-68; *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Moreover, "[a]n Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim." *Moten v. Cook*, No. 3:19-CV-267, 2019 WL 5588907, at *2 (S.D. Ohio Oct. 30, 2019), report and recommendation adopted, 2019 WL 6212398 (S.D. Ohio Nov. 21, 2019) (internal quotation omitted).

The Eleventh District court rejected Mr. Rodriguez's allied offenses claim as follows:

{¶25} Next, appellant contends counsel was ineffective for failing to argue that the kidnapping and felonious assault counts should be merged. We do not agree.

{¶26} R.C. 2941.25 reflects the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. R.C. 2941.25 provides:

> {¶27} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.

> {¶28} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶29} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court held:

{¶30} Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were

19

committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶31} At sentencing, the issue of merger was raised by the trial court at which point defense counsel conceded that the kidnapping and felonious assault offenses did not merge. The following exchange occurred on record:

> {¶32} **THE COURT**: As far as merger, do you believe that any of the three counts that your client plead to merge?

> {¶33} **[DEFENSE COUNSEL]**: Not in this case, your honor. As we discussed with [the prosecutor] and the state at length, there were essentially two separate incidents and the way the state had crafted its offer, it was one count from one incident, one count from another incident. So it's our opinion – it's our belief that this is – there is no merger.

{¶34} While the trial court did not further inquire into why the counts would not merge, the prosecutor, at the change-of-plea hearing, set forth the following factual basis for the plea:

{¶35} Had this case gone to trial the evidence would have shown that on April 20, 2019 initiating in Cuyahoga County and continuing into Lake County, specifically in Wickliffe, Lake County, Ohio the defendant and the victim * * * were in a vehicle that they got into in Cuyahoga County and drove to Lake County, Ohio. While in the vehicle the defendant continuously struck [the victim] in the face and head, [and] strangled her to the point of her losing consciousness. When she would come to and regain consciousness, he would repeat that. He prevented her from getting out of the car on at least one occasion.

{¶36} After dragging [the victim] into the garage of her residence once they arrived, he continued to assault her in this manner to the point of her losing consciousness. He then poured gasoline on her threatening to burn her alive. As a result of the assault [the victim] suffered a broken nose, two subdural hematomas, a concussion, a torn carotid artery in her neck, and various contusions and bruises on her face, head, neck, torso, back and arms.

{¶37} Appellant pleaded guilty to Count 3, kidnapping and Count 4, felonious assault. The kidnapping count alleged appellant, by force, threat, or deception, knowingly, under circumstances creating a substantial risk of serious physical harm to the victim, restrained her liberty. The felonious assault count alleged appellant knowingly caused serious physical harm to the victim. Given the factual basis, one could reasonably infer that appellant committed two separate kidnappings and at least two felonious assaults. The victim was, under circumstances creating substantial risk of serious physical harm, knowingly, by force, restrained by appellant both in the

vehicle and when she was dragged from the vehicle. Further, both in the vehicle and in the garage, appellant knowingly caused serious physical harm to the victim. In light of defense counsel's representation at sentencing, that the kidnapping and felonious assault counts were from separate incidents, as well as the prosecutor's factual basis demonstrating that at least one kidnapping and one felonious assault occurred separately, each with a separate animus, we conclude defense counsel's performance was not deficient for failing or declining to seek merger.

(ECF #9-1 at PageID 176-78; *Rodriguez,* 155 N.E.3d at 6-9).

This Court is bound by the Eleventh District's determination that the kidnapping and felonious assault convictions are not allied offenses of similar import. Therefore, Mr. Rodriguez cannot establish ineffective assistance of counsel based on counsel's failure to advocate for merger of the offenses because there was no deficient performance. *See Strickland,* 466 U.S. at 687 (to show ineffective assistance of counsel, the defendant must show counsel's performance was deficient and that the deficient performance prejudiced the defense). I recommend the District Court **DENY** the claim.

### III. Ground Three is not cognizable on federal habeas review.

In Ground Three, Mr. Rodriguez claims the trial court erred by imposing a consecutive sentence because it is not supported by the facts of the record and is contrary to law. (ECF #1-1 at PageID 29). He argues that his remorse, accountability for his actions, and "the fact that this was an isolated incident of [his] behavior" supports a concurrent sentence, not consecutive. (*Id.* at PageID 31). He does not allege the imposition of consecutive sentences violates any due process rights. The State argues this claim, as another alleged error of state law, is not cognizable on federal habeas review. (ECF #9 at PageID 78).

Under Ohio law, a trial court may impose consecutive prison terms if the court makes the required findings under Revised Code § 2929.14(C). The Eleventh District affirmed Mr.

Rodriguez's sentence on direct appeal and determined the trial court made the required findings under **§ 2929.14(C)** to support consecutive sentences, namely that his past conviction for assault on another female victim demonstrates the necessity to protect the public from "future, potentially very violent, criminal activity." (ECF #9-1 at PageID 180; *Rodriguez,* 155 N.E.3d at 8-9).

Sentencing errors are state-law issues generally not cognizable on federal habeas review. *See Estelle,* 502 U.S. at 67-68. Indeed, courts have consistently found that habeas petitioners cannot challenge the interpretation and application of Ohio's sentencing laws. *Harrison v. Parke,* 917 F.2d 1304 (table), 1990 WL 170428, at *2 (6th. Cir. 1990) ("Because it is a matter of substantive state law whether Harrison's sentences should run concurrently or consecutively, we find that the district court did not err in ruling that Harrison's challenge to his consecutive sentences was not cognizable in a federal habeas corpus proceeding."); *Croce v. Miller,* No. 1:15-CV-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action) (collecting cases), *report and recommendation adopted,* 2017 WL 3382665 (N.D. Ohio Aug. 7, 2017).

Typically, a claim alleging a constitutional violation due to consecutive sentences is not cognizable unless the petitioner shows the sentence exceeds the statutory range. *Croce,* 2017 WL 3394046, at *22 (rejecting petitioner's claim that consecutive sentences violated the petitioner's due process rights because there is no federal constitutional issue when a state sentence is within the state statutory range). Mr. Rodriguez does not allege that the sentence on each count or the total sentence exceeded the state's statutory limits. Because Mr. Rodriguez challenges only the interpretation and application of Ohio's sentencing laws, his claim is not cognizable in this Court. Therefore, I recommend the District Court **DENY** this claim.

## IV.     Request for evidentiary hearing

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-60 (6th Cir. 2001) (citing *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (cleaned up)). But a petition may be summarily dismissed and thus a hearing denied if the record clearly indicates the petitioner's claims are either barred from review or without merit. *Id.*

Here, a review of the pleadings and transcripts demonstrates the issues Mr. Rodriguez presents in his petition can be resolved from the record without the necessity of an evidentiary hearing. I therefore decline his request to conduct an evidentiary hearing.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (i) the petition states a valid claim of the denial of a constitutional right and (ii) the district court was correct in its procedural ruling. *Id.* A

23

showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Rodriguez has made no substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court not grant Mr. Rodriguez a COA as to any ground.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend the District Court **DENY** all grounds for relief. I further conclude that an evidentiary hearing is neither warranted nor necessary. Finally, I recommend the District Court **DENY** Mr. Rodriguez a certificate of appealability as to all grounds.

Dated: April 16, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl*, **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to**

object." *Howard v. Sec'y of Health and Hum. Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green,* No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard,* 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega,* 924 F.3d 868, 878-79 (6th Cir. 2019).