## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Randy V. Rodriguez,** | | **Case No. 1:21cv1363** |
| | **Petitioner,** | |
| -vs- | | **JUDGE PAMELA A. BARKER** |
| | | **Magistrate Judge Darrell A. Clay** |
| **Douglas Fender,** | | |
| **Warden,** | | |
| | **Respondent** | **MEMORANDUM OPINION AND ORDER** |

This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge Darrell A. Clay (Doc. No. 12), which recommends that Petitioner Randy V. Rodriguez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be denied.  Petitioner has filed Objections to the R&R.  (Doc. No. 13.)  For the following reasons, Petitioner's Objections (Doc. No. 13) are OVERRULED, the Report & Recommendation (Doc. No. 12) is ADOPTED as set forth herein, and the Petition (Doc. No. 1) is DENIED.

## I.    Summary of Facts

Rodriguez's habeas petition challenges the constitutionality of his conviction and sentence for kidnapping, felonious assault, and attempted tampering with evidence in the case of *State v. Rodriguez*, Lake County Court of Common Pleas Case No. Case No. 19-CR-000420. The state appellate court set forth the facts regarding Rodriguez's conviction as follows:

> {¶2} On the evening of April 20, 2019, appellant and his girlfriend, L.C. ("the victim"), left a party in Cuyahoga County. While *en route* home to Wickliffe Ohio, in Lake County, and without any ostensible warning, appellant indicated he was going to kill the victim. Appellant began to strike the victim in the face and choked her to the point of losing consciousness. When she regained consciousness, he repeated the beating. Although the victim attempted to exit the vehicle, appellant would not allow her.

{¶3} Upon arriving at their residence, appellant dragged the victim into the garage and continued the assault; the victim again lost consciousness, at which point, appellant poured gasoline on her and threatened to burn her alive.

{¶4} After apparently regaining his composure, appellant visited a neighbor, Dana Silvestro, and advised her that the victim was next door and "f'd up." Ms. Silvestro went next door and observed the victim badly beaten and laying on the garage floor. The victim vomited blood and Ms. Silvestro noticed a strong smell of gasoline. When the victim regained consciousness, she told Ms. Silvestro that appellant was trying to kill her. Both women returned to Ms. Silvestro's home where she called 911.

{¶5} Officers from the Wickliffe Police Department responded and found appellant in the garage. There was no indication he had been involved in the altercation, i.e., his clothing was clean, showing no signs of blood or stains. He advised them he was the victim's fiancé and explained that the victim became intoxicated at a party, threatened suicide by pills, and poured gasoline on herself. At this point, appellant stated he went to the neighbor for help.

{¶6} Officers explained that they needed to check the home for other potentially injured persons. Appellant declined to consent and advised the officers to obtain a warrant. Appellant was subsequently detained and taken to the Wickliffe Police Department.

{¶7} Meanwhile, the victim had been taken to the hospital for treatment. While there, officers obtained written consent to search both her vehicle and the couple's residence, which she owned. In the home, officers noticed blood stains on an area rug in the garage. The victim advised officers appellant was wearing blue jeans, a dark gray button-down shirt to the party they attended, and K-Swiss tennis shoes (clothing he was not wearing when police arrived). Inside a bedroom closet, officers observed K-Swiss tennis shoes with apparent blood on them. And, in the basement laundry, they found a load in the washer that included, among other things, a dark gray button-down shirt, blue jeans, and key to the victim's Jeep Wrangler.

{¶8} After being assessed, the victim was transported to Metro Health Center in Cleveland due to brain bleeds. After further assessment, officers learned the victim suffered from two nasal fractures, three chips to her teeth, two subdural hematomas, a concussion, a torn carotid artery, as well as multiple contusions to her face, neck, torso, back, and arms.

*State v. Rodriguez,* 155 N.E.3d 1, 2-3 (Ohio App. 11th Dist. 2020).

2

## II.    Relevant Procedural History[1]

### A.    Trial Court Proceedings

In May 2019, Rodriguez was indicted by a Lake County Grand Jury on the following nine (9) counts: (1) felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (Count One); (2) kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3) (Count Two); (3) kidnapping in violation of Ohio Rev. Code § 2905.01(B)(2) (Count Three); (4) felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (Count Four); (5) kidnapping in violation of Ohio Rev. Code § 2905.01(A)(3) (Count Five); (6) kidnapping in violation of Ohio Rev. Code § 2905.01(B)(2) (Count Six); (7) domestic violence in violation of Ohio Rev. Code § 2919.25(A) (Count Seven); (8) possessing criminal tools in violation of Ohio Rev. Code § 2923.24 (Count Eight); and (9) tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1) (Count Nine).  (Doc. No. 9-1 at PageID#s 85-88.)

On June 6, 2019, Rodriguez entered a plea of not guilty as to all charges.  (*Id*. at PageID# 90.) Several weeks later, on July 29, 2019, the state trial court conducted a hearing, at which Rodrigeuz retracted his former plea of not guilty and pled guilty to Count Three (kidnapping), Count Four (felonious assault), and a lesser included offense of Count 9 (attempted tampering with evidence). (*Id*. at PageID# 93.)  During the hearing, the state trial court identified the specific counts to which Rodriguez was pleading guilty and asked Rodriguez a series of questions, including the following:

THE COURT:    Do you understand that the court will [] have to decide if your sentences on each count will be imposed concurrently or consecutively?

---

[1] The Court's recitation of the relevant procedural history is not intended to be exhaustive.  Rather, the Court will set forth only that procedural history necessary to a resolution of the pending Objections.

3

MR. RODRIGUEZ:     I understand, sir.

THE COURT:     Do you understand what those terms mean?

MR. RODRIGUEZ:     Yes, sir.

***

THE COURT:     Do you understand that the longest minimum sentence you could serve would be nineteen years plus eighteen months?

MR. RODRIGUEZ:     Yes, sir.

THE COURT:     Do you understand that the longest maximum sentence you could serve would be twenty-four-and-a-half years plus eighteen months? Is that "yes"?

MR. RODRIGUEZ:     Yes, sir.

***

THE COURT:     Has anybody promised you that I would be lenient because you are pleading guilty?

MR. RODRIGUEZ:     No, sir.

THE COURT:     Has anybody promised you what your sentence will be in this case?

MR. RODRIGUEZ:     No.

THE COURT:     Do you understand that I do not have to follow the recommendations made by the prosecutor, your attorney or even a joint recommendation between the prosecutor and your attorney at the time of your sentencing?

MR. RODRIGUEZ:     Yes, sir.

THE COURT:     Has your attorney discussed all of the issues about this case and answered all of your questions?

MR. RODRIGUEZ:     So far, yes, sir.

THE COURT:     Are you satisfied with the advice and counsel of your attorney?

4

| MR. RODRIGUEZ: | Yes. |
| THE COURT: | Have you been threatened or coerced in any way into entering into this plea of guilty today? |
| MR. RODRIGUEZ: | No, sir. |
| THE COURT: | Are you entering this plea freely and voluntarily? |
| MR. RODRIGUEZ: | Yes, sir. |

(Doc. No. 9-2 at Tr. 15-16, 20-21.)  The record reflects that Rodriguez signed both a Written Plea of Guilty and a "Sentence Computation Chart," the latter of which expressly provided that Rodriguez could face an aggregate prison term of between 19 years plus 18 months, and 24.5 years plus 18 months. (Doc. No. 9-1 at PageID# 96-102.)

On September 5, 2019, the state trial court conducted a sentencing hearing. (Doc. No. 9-1 at PageID# 104; Doc. No. 9-3.)  Several people spoke at this hearing, including Rodriguez; Rodriguez's sister and step-mother; the victim, L.K; and L.K's neighbor Dana Silvestro.  (Doc. No. 9-3.)  Among other things, the state trial court found that "[t]he amount of violence that [Rodriguez] exhibited in this case is some of the worst that I have seen in twenty years in the criminal justice system."  (Doc. No. 9-3 at Tr. 32.)  The trial court sentenced Rodriguez to a prison term of eight (8) years on Count Three (kidnapping); six (6) years on Count Four (felonious assault); and twelve (12) months on the lesser included offense of Count Nine (attempted tampering with evidence).  (Doc. No. 9-1 at PageID# 105.)  The prison terms for Count Four and the lesser included offense of Count Nine were concurrent to each other, but consecutive to Count Three, for an aggregate minimum term of fourteen (14) years and a maximum term of eighteen (18) years.  (*Id.*)

**B.     Direct Appeal**

5

On October 9, 2019, Rodriguez, through new counsel, filed a timely appeal of his conviction and sentence in the state appellate court.  (Doc. No. 9-1 at PageID# 109.)  In his appellate brief, Rodriguez raised the following three grounds for relief:

> **First Assignment of Error**: The trial court erred when it accepted Appellant's guilty plea because Appellant received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights and as a result Appellant's guilty plea was not made knowingly and voluntarily.
>
> **Second Assignment of Error**: The trial court erred and Appellant received ineffective assistance of counsel when the convictions for Kidnapping and Felonious Assault were not merged for purposes of sentencing.
>
> **Third Assignment of Error**: The trial court erred when it imposed a consecutive sentence on Appellant because a consecutive sentence is not supported by the facts of the record and is contrary to law.

(*Id*. at PageID#s 119-36.)  On June 8, 2020, the Ohio Court of Appeals for the Eleventh District (hereinafter "state appellate court") affirmed.  *See State v. Rodriguez,* 155 N.E.3d 1, 2-3 (Ohio App. 11th Dist. 2020).  *See also* Doc. No. 9-1 at PageID#s 168-181.

On December 4, 2020, Rodriguez filed a notice of appeal and motion for leave to file a delayed appeal in the Supreme Court of Ohio.  (Doc. No. 9-1 at PageID#s 183-195.)  On December 15, 2020, the Supreme Court of Ohio granted Rodriguez's motion for delayed appeal and ordered him to file a memorandum in support of jurisdiction.  (*Id.* at PageID# 213.)  Rodriguez filed his Memorandum in Support of Jurisdiction on January 11, 2021, raising the same three grounds for relief that he raised on direct appeal to the state appellate court.  (*Id*. at PageID#s 215-232.)  On March 30, 2021, the Ohio Supreme Court declined jurisdiction.  (*Id*. at PageID# 269.)

### C.    Federal Court Proceedings

On July 9, 2021,[2] Rodriguez filed a *pro se* Petition for Writ of Habeas Corpus in this Court. (Doc. No. 1.) Therein, he asserts the following three grounds for relief:

**Ground One**: The trial court erred when it accepted Petitioner's plea because Petitioner received ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment Rights and as a result Petitioner's guilty plea was not made knowingly, voluntarily, and/or intelligently.

**Ground Two**: The trial court erred and petitioner received ineffective assistance of counsel when the convictions of kidnapping and felonious assault were not merged for the purposes of sentencing.

**Ground Three**: The trial court erred when it imposed a consecutive sentence that was not supported by the facts of the record and contrary to law.

(Doc. No. 1-1 at PageID#s 19-31.) Rodriguez requests the Court grant his Petition or hold an evidentiary hearing to present evidence in person. (*Id.* at PageID#s 31-32.) On March 3, 2022, Respondent filed a Return of Writ, along with the state court record. (Doc. Nos. 9, 9-1 through 9-3.) Rodriguez, through counsel, filed his Traverse on June 6, 2022. (Doc. No. 11.)

On April 16, 2024, the Magistrate Judge issued a Report & Recommendation in which he recommended that Rodriguez's Petition be denied. (Doc. No. 12.) Rodriguez, through counsel, filed his Objections on April 30, 2024. (Doc. No. 13.) Respondent did not file a Response.

## III.    Standard of Review

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*. Fed. R. Civ. P. 72(b)(3). Specifically, a district judge:

must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the

---

[2] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). While the Petition herein did not arrive at the Court for filing until July 15, 2021, Rodriguez states that he placed it in the prison mailing system on July 9, 2021. (Doc. No. 1 at PageID# 13.) Thus, the Court will consider the Petition to be filed on July 9, 2021.

recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*.   "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981)).

## IV.    Legal Standard regarding AEDPA Petitions

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37 (2012); *Renico v Lett*, 559 U.S. 766 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Shimel v. Warren*, 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Moreover, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49.  *See also Lopez v. Smith*, 574 U.S. 1,

4 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58 (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. *See also Carter v. Bogan*, 900 F.3d 754, 767 (6th Cir. 2018). By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel,* 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result

9

it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *Id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

## V.      Analysis

### A.      Ground One

In Ground One, Rodriguez argues that "trial counsel's ineffective assistance by failing to move to suppress the evidence obtained from the search of [his] residence" undermines the validity of his guilty plea such that he did not enter it knowingly, voluntarily, and intelligently. (Doc. No. 1-1 at PageID# 22.) Rodriguez raised this argument on direct appeal, both to the state appellate court and the Supreme Court of Ohio. (Doc. No. 9-1 at PageID#s 125-130, 220-226.) The state court appellate court considered Rodriguez's argument on the merits and rejected it, as follows:

> {¶13} Under his first assignment of error, appellant asserts his trial counsel was ineffective for failing to challenge the search of his residence with a motion to suppress.
>
> {¶14} To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Ziefle*, 11th Dist. Ashtabula No. 2007-A-0019, 2007-Ohio-5621, 2007 WL 3052735, ¶20. As such, appellant must show that counsel's performance was deficient and must additionally show prejudice resulting

10

from the deficient performance. *State v. Jackson*, 11th Dist. Ashtabula No. 2002-A-0027, 2004-Ohio-2442, 2004 WL 1085322, ¶9.

{¶15} "'Failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L.Ed.2d 305 (1986). "'When claiming ineffective assistance due to failure to file or pursue a motion to suppress, an appellant must point to evidence in the record showing there was a reasonable probability the result of [the proceeding] would have differed if the motion had been filed or pursued.'" *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-5651, 2013 WL 6808959, ¶38, quoting *State v. Walker*, 11th Dist. Lake No. 2009-L-155, 2010-Ohio-4695, 2010 WL 3796582, ¶15.

{¶16} Generally, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L.Ed.2d 639 (1980). It is a fundamental Fourth Amendment principle, however, that neither a search warrant nor probable cause is required if valid consent to search, an exception to the constitutional requirements, is given. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973). Consent to search is valid by someone other than a defendant where the third-party granting consent possessed common authority over the premises sought to be searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L.Ed.2d 242 (1974).

{¶17} With the foregoing in mind, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Georgia v. Randolph*, 547 U.S. 103, 120, 126 S. Ct. 1515, 164 L.Ed.2d 208 (2006). In *Randolph*, the defendant's estranged wife had given police consent to search the marital home for items of drug use. The defendant, who was present at the home, refused to give police consent. In concluding the consent of the estranged wife could not override the objection of the defendant, the United States Supreme Court recognized two "complementary rules," "one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." *Id*. at 121-122, 126 S. Ct. 1515. The latter rule is fundamentally premised upon the objecting occupant's express objection as well as his physical presence. *Id*. at 120, 126 S. Ct. 1515.

{¶18} Later, in *Fernandez v. California*, 571 U.S. 292, 134 S. Ct. 1126, 188 L.Ed.2d 25 (2014), the consent of a joint occupant of a residence was deemed valid, despite the objection of a defendant, who had been arrested and removed from the home before subsequent consent was obtained. In *Fernandez*, police knocked on an apartment door when they heard screams from the residence. The door was answered by a woman who appeared battered and bloody. The defendant came to the door and

11

objected to the officer's entry. Suspecting the defendant had assaulted the woman, the officer placed him under arrest and removed him. An officer later returned to the apartment and obtained oral and written consent to search the same. In declining to give *Randolph, supra*, an overly expansive interpretation, the Court upheld the search, holding a lawful occupant of a home has the right to invite police to enter the dwelling to conduct a search, despite the absent co-occupant's previous objection. *Fernandez, supra*, at 307, 134 S. Ct. 1126.

{¶19} In this matter, appellant objected to the search, but was subsequently arrested and taken to the police department. The co-occupant of the home, the victim, subsequently provided consent to officers from the hospital to search the residence. This fact pattern is similar to the facts in *Fernandez* and thus, we conclude the victim's consent and the officers' subsequent search were valid.

{¶20} We recognize that, in *Fernandez*, consent was obtained by a co-occupant who was in the residence when consent was given. We do not think this factual distinction affects the legal analysis, however. That is, in *Randoph, supra*, the majority consistently repeated it was *the defendant's* physical presence and immediate objection to his wife's consent that distinguished it from prior case law. The Court reinforced this point in its conclusion, holding "a warrantless search of a shared dwelling for evidence over the *express refusal of consent by a physically present resident* cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id*. at 120, 126 S. Ct. 1515. (emphasis added). The crucial point, therefore, is the presence or absence of the objector, not the consenting co-occupant; simply because the victim was in the hospital when she gave consent should not invalidate that consent. To conclude otherwise would allow a coincidental formality (the co-occupant's physical presence in the residence) to vitiate consent that is otherwise valid and voluntary. In effect, an absent, expressly-objecting co-occupant has "assumed the risk" that another co-occupant "might permit the common area to be searched." *Matlock, supra*, at fn. 7.

{¶21} Notwithstanding the foregoing, appellant relies upon *United States v. Hudsputh*, 459 F.3d 922 (8th Cir. 2006) ("*Hudspeth I*") in support of his argument that counsel should have filed a motion to suppress. In that case, the defendant objected to the search of his home computer while officers were searching his place of business, pursuant to a valid warrant. Subsequently, police obtained consent from the defendant's wife to conduct the search. The Eighth Circuit invalidated the search; later, however, on rehearing *en banc*, the court upheld the search relying principally upon the authority of *Fernandez, supra. See United States v. Hudspeth*, 518 F.3d 954 (8th Cir. 2008). Appellant requests this court to adopt the reasoning of *Hudspeth I* which would, in his apparent view, demonstrate that counsel had a reasonable probability of success on the hypothetical motion to suppress. We decline to accept this invitation.

{¶22} Our role in evaluating counsel's performance is, in light of controlling authority, to assess whether counsel's performance was deficient because, given the evidence, there was a reasonable probability of success. To adopt the defunct ruling in *Hudspeth I* would be advisory (because we are not addressing the merits of the denial of an actual motion to suppress) and would transcend the narrow scope of our review. Here, there is evidence of valid consent by a co-occupant after appellant, over objection, was removed from the residence. *Randolph* and *Fernandez* are controlling authority from the United States Supreme Court, regardless of any potential argument counsel could have made vis-à-vis *Hudputh I* in a hypothetical motion to suppress. And, as discussed above, the facts of the instant case, when viewed in relation to the holdings in *Randolph* and *Fernandez*, demonstrate no reasonable probability of succeeding on a motion to suppress. We therefore hold counsel's performance was not deficient for failing to file such a motion.

{¶23} Appellant also argues counsel should have filed a motion to suppress due to an alleged invalid protective sweep of his residence. He asserts that, at no point, did the officers at the scene have any reason to believe others were inside the home, let alone that other potential occupants who were in danger or posed a danger to the officers. Thus, he maintains the officers lacked "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the * * * scene." *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, 2015 WL 1512790, ¶14.

{¶24} Even assuming the officers had no reasonable basis for conducting the protective sweep, no evidence was removed as a result of the sweep. Only after the victim gave valid consent to search the residence did officers obtain evidence relating to the incident. Where nothing was seized, there would be no basis to file a motion to suppress based upon an unreasonable seizure, even if the search is arguably problematic.

*Rodriguez*, 155 N.E.3d at 3-6.

In his Petition, Rodriguez argues that the state appellate court erred when it failed to adopt the reasoning and justification of the *Hudspeth I* decision "as the applicable standard under the Ohio Constitution and Ohio law." (Doc. No. 1-1 at PageID# 24.) The Magistrate Judge rejected this argument, finding that the state appellate court "considered the Supreme Court precedent set forth in *Strickland, Randolph*, and *Fernandez* and reasonably applied the law the facts before it." (Doc. No. 12 at pp. 16-17.)

13

In his Objections, Rodriguez argues that "the Magistrate [Judge] more or less just rubber stamp[ed]" the state appellate decision "instead of searching for the review of the issues submitted herein." (Doc. No. 13 at p. 3.)  Rodriguez asserts that his trial counsel "failed to file a critical Motion to Suppress that would have changed the decision-making process within the plea bargain stage," which caused Rodriguez to "receive[] misinformation to coerce his guilty plea." (*Id.*)  Rodriguez insists that "there was a reasonable probability that the motion to suppress would have been granted and Rodriguez would not have entered the guilty plea that he did but, rather, he would have rejected the State's plea offer and proceeded to trial." (*Id.* at p. 5.)

For the following reasons, the Court finds Rodriguez's Objections to be without merit.  The state appellate court's decision was neither an unreasonable application of, nor contrary to, clearly established United States Supreme Court case law.  The state appellate court correctly identified and laid out the two-prong test under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a defendant to demonstrate that (1) his counsel's performance was deficient, and (2) he was prejudiced as a result.  *See Strickland*, 466 U.S. at 687.  In the context of a guilty plea,[3] "[t]he second, or 'prejudice,' requirement … focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985).  "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

---

[3] It is well established that the two prong *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

14

Because the state appellate court herein decided Rodriguez's ineffective assistance of counsel claim on the merits, "AEDPA adds another layer of deference to our review." *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (citing 28 U.S.C. § 2254(d)(1)).  This means that this Court's review of the state court's adjudication of Rodriguez's ineffective assistance claim must be "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "The question 'is not whether a federal court believes the state court's determination' under *Strickland* 'was incorrect[,] but whether [that determination] was unreasonable—a substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).  To qualify as "unreasonable," the state court's adjudication of the claim must have been "so lacking in justification" that it amounts to "an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington*, 562 U.S. at 103.  *See also Hendrix*, 893 F.3d at 922.

Trial counsel's failure to file a "plainly meritorious motion to suppress" may support a claim of ineffective assistance of counsel.  *Hendrix,* 893 F.3d at 922.  "But 'the failure to file a [meritorious] suppression motion does not constitute *per se* ineffective assistance of counsel.'" *Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)).  For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011).  A petitioner also must show that counsel had no reasonable strategic rationale for not filing the motion. *Davis v. Lafler*, 658 F.3d 525, 537 (6th Cir. 2011) (*en banc*).  *See also Hendrix*, 893 F.3d at 922.

Here, the Court finds that it was not contrary to, or an unreasonable application of, clearly established federal law for the state appellate court to conclude that Rodriguez's trial counsel was not ineffective for failing to file a motion to suppress on the basis of *Hudspeth I.*  As the state appellate

15

court correctly noted, the circumstances surrounding the warrantless search of Rodriguez's residence are very similar to the facts in *Fernandez, supra*.  In that case, Fernandez objected to a search of his apartment, where he lived with his girlfriend.  *Fernandez*, 571 U.S. at 296.  The police then lawfully arrested him.  *Id*.  A detective subsequently returned to the apartment and received consent from Fernandez's girlfriend. *Id*.  The Supreme Court found that Fernandez was not "present" when the girlfriend consented and held that "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason." *Id*. at 302–03.  Therefore, the Supreme Court concluded, Fernandez's earlier objection did not remain effective and the search of the apartment was valid.  *Id.* at 302.  So too here.  Just as in *Fernandez*, Rodriguez objected to a search of his residence and was arrested.  *See Rodriguez*, 155 N.E.3d at 3.  The police subsequently obtained consent to search the residence from the victim, L.K. (who owned the residence in question), which resulted in the recovery of incriminating evidence.  *Id.*

Given the factual similarities between the search of Rodriguez's residence and the search in *Fernandez*, it was not unreasonable for the state appellate court to conclude there was no reasonable probability of succeeding on a motion to suppress the incriminating evidence obtained from the search of Rodriguez's residence.  It therefore follows that it was reasonable for the state appellate court to conclude that trial counsel was not deficient for failing to file such a motion.  In other words, the state appellate court reasonably concluded that a motion to suppress under the circumstances presented would not have been "plainly meritorious" such that trial counsel would necessarily have been ineffective for failing to file it.  *See Premo*, 562 U.S. at 124; *Hendrix,* 893 F.3d at 922.

In so finding, the Court rejects Rodriguez's argument that the state appellate court unreasonably concluded that trial counsel was not ineffective for failing to file a motion to suppress

16

on the basis of *Hudspeth I*. As an initial matter, Rodriguez's reliance on *Hudspeth I* is questionable given the fact that the Eighth Circuit reconsidered and vacated *Hudspeth I* in an *en banc* decision in *United States v. Hudspeth*, 518 F.3d 954 (8th Cir. 2008) (hereinafter "*Hudspeth II*"). Moreover, even aside from the fact that *Hudspeth I* was vacated, the Court notes that *Hudspeth I* was decided in 2006, well prior to the United States Supreme Court's 2014 controlling decision in *Fernandez*. As noted above, in *Fernandez*, the Supreme Court expressly clarified that an objecting occupant must be physically present at a residence in order for his objection to override the consent of another occupant with authority to consent to a warrantless search. Thus, at the time of Rodriguez's plea, United States Supreme Court authority weighed against the filing of any motion to suppress on the grounds that Rodriguez had objected to the search prior to his arrest and detention. Under these circumstances, it was not contrary to, or an unreasonable application of, clearly established federal law for the state appellate court to conclude that Rodriguez's trial counsel was not ineffective for failing to file a motion to suppress on the basis of *Hudspeth I*.

Rodriguez also argues that the state appellate court erred in concluding that trial counsel was not ineffective for failing to file a motion to suppress regarding the officers' protective sweep of the residence. (Doc. No. 13 at pp. 5-6.) The Court rejects this argument. As noted above, the state appellate court concluded that "[e]ven assuming the officers had no reasonable basis for conducting the protective sweep, no evidence was removed as a result of the sweep" and, therefore, "there would be no basis to file a motion to suppress based upon an unreasonable seizure, even if the search is arguably problematic." *Rodriguez*, 155 N.E.3d at 6. Rodriguez fails, entirely, to address the state appellate court's reasoning or to otherwise explain how the state appellate court's conclusion is contrary to, or unreasonable application of, clearly established federal law. Accordingly, the Court

17

finds Rodriguez's objection regarding the failure to file a motion to suppress based on the protective sweep to be unsupported and without merit.

Finally, the Court notes that Rodriguez appears to attempt to raise several new arguments in his Objections that were not previously raised, either before the state courts or in his Petition. For example, Rodriguez asserts (summarily) that trial counsel "never investigated any possible defenses, nor contacted any witnesses for the defense." (Doc. No. 13 at p. 4.) Rodriguez also spends several pages of his Objections citing legal authority regarding structural error, the right to compulsory process and confrontation of witnesses, and due process violations relating to the admission of evidence. (*Id*. at pp. 7-10.) While generally reciting this authority, Rodriguez fails to apply any of it to the instant case. Nor does he argue or demonstrate that he raised any legal arguments relating to the above authority on direct appeal or in his Petition.

To the extent Rodriguez is attempting to raise any new claims or grounds for relief in his Objections, the Court declines to consider them. It is well established that "[a] habeas petitioner cannot raise new claims or arguments in an objection that were not presented to the Magistrate Judge." *Cody v. Sheldon,* 2020 WL 1060031 at *8 (N.D. Ohio Mar. 5, 2020). *See also Biggs v. Coleman*, 2014 WL 185893 at *5 (N.D. Ohio Jan. 15, 2014) ("Objections Four and Five assert new grounds for relief that were not set forth in the habeas petition, and, consequently, the magistrate judge had no opportunity to address them. Because these new grounds for relief are not properly before the Court, they are overruled.") Because Rodriguez did not raise any of the above arguments or claims in his Petition, the Court finds that they are improper and will not consider them herein.

Moreover, even if the Court were to consider Rodriguez's new claims, they would be denied as unexhausted and procedurally defaulted because he failed to properly raise any of them before the

state courts and has not demonstrated that he can do so now.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (noting that "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures'")(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999)); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (explaining that "a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule."); *Griffin v. Lazaroff*, 2020 WL 1452302 at * 10 (N.D. Ohio March 25, 2020) ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.")  Moreover, Rodriguez does not argue that cause or prejudice exists to excuse the procedural default of these claims.

Accordingly, and for all the reasons discussed above, the Court finds that Rodriguez's Objections with regard to Ground One are without merit and rejected.  Ground One of Rodriguez's Petition is, therefore, denied.

### B.  Ground Two

In Ground Two, Rodriguez argues that his kidnapping and felonious assault convictions are allied offenses of similar import under Ohio Rev. Code § 2941.25 "because the conduct that posed the substantial risk of physical harm that Petitioner created towards the victim for the Kidnapping charge is the same conduct that formed the basis of the Felonious Assault charge and vice versa." (Doc. No. 1-1 at p. 13.)  Rodriguez maintains that the trial court erred in failing to merge these counts for purposes of sentencing and, further, that his trial counsel was ineffective for failing to argue that these counts should be merged.  (*Id.* at pp. 11-13.)

Rodriguez raised this argument on direct appeal, both to the state appellate court and the Supreme Court of Ohio.  (Doc. No. 9-1 at PageID#s 130-133, 226-229.)  The state court appellate court considered Rodriguez's argument on the merits and rejected it, as follows:

{¶25} Next, appellant contends counsel was ineffective for failing to argue that the kidnapping and felonious assault counts should be merged. We do not agree.

{¶26} R.C. 2941.25 reflects the General Assembly's intent to prohibit or allow multiple punishments for two or more offenses resulting from the same conduct. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 11. R.C. 2941.25 provides:

{¶27} (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment * * * may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶28} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment * * * may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶29} In *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court held:

{¶30} Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *Ruff, supra*, at paragraph three of the syllabus.

{¶31} At sentencing, the issue of merger was raised by the trial court at which point defense counsel conceded that the kidnapping and felonious assault offenses did not merge. The following exchange occurred on record:

{¶32} THE COURT: As far as merger, do you believe that any of the three counts that your client plead to merge?

{¶33} [DEFENSE COUNSEL]: Not in this case, your honor. As we discussed with [the prosecutor] and the state at length, there were essentially two separate incidents and the way the state had crafted its offer, it was one count from one

20

incident, one count from another incident. So it's our opinion -- it's our belief that this is -- there is no merger.

{¶34} While the trial court did not further inquire into why the counts would not merge, the prosecutor, at the change-of-plea hearing, set forth the following factual basis for the plea:

{¶35} Had this case gone to trial the evidence would have shown that on April 20, 2019 initiating in Cuyahoga County and continuing into Lake County, specifically in Wickliffe, Lake County, Ohio the defendant and the victim * * * were in a vehicle that they got into in Cuyahoga County and drove to Lake County, Ohio. While in the vehicle the defendant continuously struck [the victim] in the face and head, [and] strangled her to the point of her losing consciousness. When she would come to and regain consciousness, he would repeat that. He prevented her from getting out of the car on at least one occasion.

{¶36} After dragging [the victim] into the garage of her residence once they arrived, he continued to assault her in this manner to the point of her losing consciousness. He then poured gasoline on her threatening to burn her alive. As a result of the assault [the victim] suffered a broken nose, two subdural hematomas, a concussion, a torn carotid artery in her neck, and various contusions and bruises on her face, head, neck, torso, back and arms.

{¶37} Appellant pleaded guilty to Count 3, kidnapping and Count 4, felonious assault. The kidnapping count alleged appellant, by force, threat, or deception, knowingly, under circumstances creating a substantial risk of serious physical harm to the victim, restrained her liberty. The felonious assault count alleged appellant knowingly caused serious physical harm to the victim. Given the factual basis, one could reasonably infer that appellant committed two separate kidnappings and at least two felonious assaults. The victim was, under circumstances creating substantial risk of serious physical harm, knowingly, by force, restrained by appellant both in the vehicle and when she was dragged from the vehicle. Further, both in the vehicle and in the garage, appellant knowingly caused serious physical harm to the victim. In light of defense counsel's representation at sentencing, that the kidnapping and felonious assault counts were from separate incidents, as well as the prosecutor's factual basis demonstrating that at least one kidnapping and one felonious assault occurred separately, each with a separate animus, we conclude defense counsel's performance was not deficient for failing or declining to seek merger.

*Rodriguez*, 155 N.E.3d at 6-8.

The Magistrate Judge concluded that, to the extent Rodriguez claimed that the trial court

violated Ohio Rev. Code § 2941.25, such a claim is not cognizable on federal habeas review.  (Doc.

No. 12 at p. 19.)  After reciting the state appellate court's analysis of Rodriguez's claim, the Magistrate Judge then found that it was bound by that court's determination that the kidnapping and felonious assault convictions are not allied offenses of similar import.  (*Id*. at p. 21.)  The Magistrate Judge concluded that Rodriguez could, therefore, not establish ineffective assistance of appellate counsel based on counsel's failure to advocate for merger. (*Id*.)

In his Objections, Rodriguez first cites the sufficiency of the evidence standard under *Jackson v. Virginia*, 443 U.S. 307 (1979) and argues that "the evidence does not support a finding that [he] committed Kidnapping and Felonious Assault with either separate conduct or animus." (Doc. No. 13 at p. 14.)  Citing several Ohio appellate decisions, Rodriguez maintains that "the evidence within the record indicates that the offenses of Kidnapping and Felonious Assault were committed at the same time and were not committed with a separate animus or motivation, in one location, was [sic] a continuous inseparable act …"  (*Id*. at p. 16.)  Lastly, Rodriguez argues that "Defense counsel's failure to investigate defendant's case, failure to interview potential witnesses prior to trial, as well as failure to prepare for trial and get evidence on behalf of the defendant for trial would violate the fundamental principles of justice that insures all American citizens their constitutional right to due process and faith in our justice system." (*Id*. at p. 17.)

As an initial matter, Rodriguez again raises several new claims that were not previously raised in his Petition or before the state courts.  Specifically, the record reflects that Rodriguez did not raise a  sufficiency of the evidence claim on direct appeal, either to the state appellate court or the Supreme Court of Ohio.  Nor did he raise an ineffective assistance of counsel claim based on the alleged failure to investigate, interview witnesses, and/or prepare for trial.  Thus, the Court will not consider any such new claims, both because they are raised for the first time in his Objections and because they

are unexhausted and procedurally defaulted.[4] *See, e.g., Cody,* 2020 WL 1060031 at *8 ("A habeas petitioner cannot raise new claims or arguments in an objection that were not presented to the Magistrate Judge."); *Biggs,* 2014 WL 185893 at *5.  *See also Lovins*, 712 F.3d at 295 (explaining that "a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule."); *Williams*, 460 F.3d at 806; *Griffin*, 2020 WL 1452302 at * 10.

Turning to the claim that Rodriguez did raise on direct appeal, the Court finds as follows.  In both his Appellate Brief and Memorandum in Support of Jurisdiction in the state appellate court and Ohio Supreme Court, respectively, Rodriguez argued that the state trial court violated Ohio Rev. Code § 2941.25 when it failed to merge his convictions for Kidnapping and Felonious Assault.  (Doc. No. 9-1 at PageID#s 130-133, 226-229.)  The Court agrees with the Magistrate Judge that this claim is not cognizable in these federal habeas proceedings because "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," not issues of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  *See also Minor v. Wainwright*, 2019 WL 2489656 at * 2 (6th Cir. June 6, 2019) ("Minor's first claim, that the trial court erred by not merging his convictions as allied offenses, is based on the application of Ohio Revised Code § 2941.25(A), and not the Double Jeopardy Clause. The Ohio courts' handling of its allied offenses statute is not cognizable on federal habeas review.") (citing *Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014)).

---

[4] Rodriguez does not argue that cause or prejudice exists to excuse the procedural default of these claims.

Moreover, to the extent Rodriguez's Petition could be interpreted as raising a double jeopardy claim, any such claim also fails. The Double Jeopardy Clause of the Fifth Amendment protects against (among other things) the imposition of multiple punishments for the same offense. *See Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013). This prohibition against multiple punishments protects only against the imposition of sentences that are greater than the state legislature intended. *Id.* Thus, if the state legislature intended to impose multiple punishments for the same offense, no Fifth Amendment violation has occurred. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *White v. Howes*, 586 F.3d 1025, 1031 (6th Cir. 2009) (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)). Therefore, when determining intent for purposes of double jeopardy analysis, federal courts are bound by a state court's determination that a legislature intended multiple punishments for a single criminal incident. *See Lash v. Sheldon*, 2020 WL 6712165 at *15 (N.D. Ohio Oct. 20, 2020), *report and recommendation adopted by* 2020 WL 6702051 (N.D. Ohi Nov. 13, 2020); *White*, 586 F.3d at 1031.

In Ohio, courts apply Ohio Rev. Code § 2941.25 to determine whether the Ohio legislature intended "cumulative punishments" for certain, multiple offenses. *See Volpe*, 708 F.3d at 697. In the instant case, the state appellate court cited and applied Ohio Rev. Code § 2941.25, as well as the Ohio Supreme Court's decision in *State v. Ruff*, 143 Ohio St.3d 114 (2015), and determined that Rodriguez's convictions for Kidnapping and Felonious Assault were not allied offenses of similar import because each offense involved a separate incident which occurred separately and with a separate animus. *Rodriguez*, 155 N.E.3d at 7-8. Specifically, the state appellate court determined that, under the facts presented by the State at the change of plea hearing, "one could reasonably infer"

24

that Rodriguez committed two separate kidnappings (i.e., first, when Rodriguez restrained L.K. in the vehicle and, second, when he dragged her from the vehicle to the garage) and two separate felonious assaults (i.e., first, when Rodriguez assaulted L.K. in the vehicle and, second, when he assaulted her in the garage). Given this factual basis, the state appellate court determined that trial counsel was not ineffective for "failing or declining to seek merger." *Id.* The Supreme Court of Ohio did not disturb that determination.

As noted above, this Court is bound by the state appellate court's interpretation of state law and its determination that Rodriguez's offenses were not subject to merger. *See Volpe*, 708 F.3d at 697; *Bryant v. Robinson*, 2023 WL 3251214 at * 3 (N.D. Ohio May 4, 2023). Further, while the state appellate court analyzed Rodriguez's claim only under Ohio Rev. Code § 2941.25, the Sixth Circuit has made clear that a state court's analysis under that statute "is entirely dispositive of the federal double jeopardy claim." *Jackson*, 745 F.3d at 210. *See also Randle v. Bracy*, 2022 WL 11368253 at * 1-2 (6th Cir. 2022). Rodriguez has failed to sufficiently argue or demonstrate that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Nor has he sufficiently argued or demonstrated that the decision was based on unreasonable determination of the facts presented in the state court proceedings.

Lastly, and in light of the above, the Court finds that it was not contrary to, or an unreasonable application of, clearly established federal law for the state appellate court to conclude that Rodriguez's trial counsel was not ineffective for failing to advocate for merger of the Kidnapping and Felonious Assault convictions. The state appellate court correctly identified and laid out the two-prong test under *Strickland*, *supra* and reasonably concluded that, given the factual basis presented

at the change of plea hearing, Rodriguez's trial counsel's performance was not deficient for failing to seek merger. Although Rodriguez cites several Ohio cases which he believes are contrary to the state appellate court's decision, he has failed to demonstrate that the state appellate court's decision was contrary to, or an unreasonable application of, clearly established *federal* law, as required under § 2254(d)(1).

Accordingly, and for all the reasons discussed above, the Court finds that Rodriguez's Objections with regard to Ground Two are without merit and rejected. Ground Two of Rodriguez's Petition is, therefore, denied.

### C.    Ground Three

Lastly, in Ground Three, Rodriguez contests the state trial court's imposition of consecutive sentences. In his *pro se* Petition, Rodriguez argues that, under Ohio Rev. Code § 2929.14(C), the trial court's imposition of consecutive sentences was "unreasonable, contrary to the principles of consecutive sentencing, and not supported by the record." (Doc. No. 1-1 at pp. 14-16.) In response, the State argues that Rodriguez's claim is not cognizable because it involves only an issue of state law. (Doc. No. 9 at pp. 21-22.) Rodriguez then filed his Traverse (through counsel), in which he asserts (for the first time) that "Ground Three centers around the right to Due Process of Law, Equal Protection, and Effective Assistance of Counsel." (Doc. No. 11 at p. 14.) Therein, Rodriguez argues that his consecutive sentences are "very disproportionate" and that the state trial court "failed to give all the required statutory factors the proper consideration." (*Id.* at p. 17.)

The Magistrate Judge concluded that Ground Three should be denied because "sentencing errors are state-law issues generally not cognizable on federal habeas review." (Doc. No. 12 at p. 22.) The Magistrate Judge further noted that Rodriguez had not alleged that his sentence on each count or

the total sentence exceeded the state's statutory limit.  (*Id*.)  In his Objections, Rodriguez again argues that the imposition of consecutive sentences violates his rights to due process, equal protection, and effective assistance of counsel.  (Doc. No. 13 at p. 18-19.) He also asserts, generally and without further explanation, that "a criminal defendant possesses a constitutional right not to be sentenced on the basis of 'misinformation of constitutional magnitude.'" (*Id.*)  Rodriguez emphasizes that he has no previous criminal record, and that consecutive sentences are not appropriate because "the aforementioned actions were of a domestic situation that did not involve anyone outside [his] home." (*Id*. at pp. 21-22.)

The record reflects that, on direct appeal, Rodriguez argued that the trial court's imposition of consecutive sentences was contrary to state law and unsupported by the record. (Doc. No. 9-1 at PageID#s 133–135, 229-231.)  Notably, Rodriguez did not argue (either in his Appellate Brief or his Memorandum in Support of Jurisdiction) that the imposition of consecutive sentences violated his federal constitutional rights.  (*Id*.)  Thus, Rodriguez's arguments, in his Traverse, that the imposition of consecutive sentences violated his federal constitutional rights to due process, equal protection, and/or effective assistance of counsel (or were based on "misinformation of constitutional magnitude") were not fairly presented to the state courts and are, therefore, unexhausted and procedurally defaulted.[5]  *See Lovins*, 712 F.3d at 295; *Williams*, 460 F.3d at 806; *Griffin*, 2020 WL 1452302 at * 10.  Accordingly, to the extent Rodriguez purports to assert any such claims, they are denied.

---

[5] Rodriguez does not argue that cause or prejudice exists to excuse the procedural default of these claims.

Turning to the state law claim that Rodriguez did raise on direct appeal, the state appellate court recited the sentencing factors under Ohio Rev. Code § 2929.14(C), quoted the trial court's findings during the sentencing hearing, and concluded that "the trial court complied with its statutory duty by making the requisite findings" and "the trial court's findings are sufficiently supported by the record to support consecutive terms of imprisonment." *Rodriguez,* 155 N.E.3d at 8.

The Court agrees with the Magistrate Judge that Rodriguez's claim that the trial court erred in imposing consecutive sentences under Ohio Rev. Code § 2929.14 asserts only a matter of the application of state sentencing laws and is not cognizable on federal habeas review. *See, e.g., Roberts v. Wainwright*, 2020 WL 4018621 at * 1 (6th Cir. Jan. 31, 2020); *Reed v. Jenkins*, 2017 WL 6210790 at *3 (6th Cir. June 21, 2017); *Crawford v. Foley*, 2023 WL 6131059 at * 10 (N.D. Ohio Aug, 31, 2023) (collecting cases), *report and recommendation adopted by* 2023 WL 6129950 (N.D. Ohio Sept. 19, 2023).  *See also Estelle*, 502 U.S. at 63 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Rettig v. Jefferys*, 557 F.Supp.2d 830, 838 (N.D. Ohio 2008) ("[A] challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action.") (collecting cases).

Accordingly, and for all the reasons discussed above, the Court finds that Rodriguez's Objections with regard to Ground Three are without merit and rejected. Ground Three of Rodriguez's Petition is, therefore, denied.

## VI.     Conclusion

For the foregoing reasons, Rodriguez's Objections (Doc. No. 13) are overruled, the Report & Recommendation (Doc. No. 12) is adopted as set forth herein, and the Petition (Doc. No. 1) is denied. In addition, Rodriguez has not sufficiently demonstrated the need for an evidentiary hearing and his

request for the same is denied.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**


          _s/Pamela A. Barker_
          PAMELA A. BARKER
Date:  June 11, 2024          U. S. DISTRICT JUDGE